## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LARRY W. RADER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-340-SLR/LPS |
| | : | |
| ING BANK fsb, et al., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| LARRY W. RADER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-544-SLR/LPS |
| | : | |
| ING GROEP, N.V., ET AL., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| LARRY W. RADER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-781-SLR/LPS |
| | : | |
| SHAREBUILDER SECURITIES | : | |
| CORPORATION, ET AL., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION ON
## CASE-DISPOSITIVE MOTIONS AND
## ORDER REGARDING DISCOVERY AND SANCTIONS MOTIONS

The *pro se* plaintiff, Larry W. Rader, has filed these three related actions asserting

multiple causes of action against multiple defendants.  All three of the actions arise from Rader's

efforts, in January 2009, to open and use an online stock trading account with Defendant

ShareBuilder Securities Corporation ("Sharebuilder").  Rader attempted to fund his ShareBuilder

account with monies held in a savings account he had with non-party U.S. Bank.  Due to an error

in entering Rader's U.S. Bank account number, there were delays and other problems with

Rader's use of his ShareBuilder account to buy and sell stock.  Defendant ShareBuilder

eventually suspended and then terminated Rader's account with it.  These actions followed.

Pending before the Court are a total of 23 motions.  For the reasons set forth below, I

recommend that Defendants be **GRANTED** judgment on Rader's claims in all three actions.  I

further order that the various discovery motions be **DENIED**.  I **GRANT** Defendants' motion to

sanction Rader for his failure to appear at his deposition but **DENY** their other sanctions

requests.


## BACKGROUND

### *Rader I*

Rader filed his complaint in Civil Action Number 09-340 (hereinafter "*Rader I*") on May

12, 2009 (D.I. 1) and an amended complaint on May 27, 2009 (D.I. 5).  The Defendants in *Rader

I* are ING Bank fsb ("ING Direct") and ShareBuilder.  (D.I. 5)

In *Rader I*, Rader alleges that he opened a ShareBuilder online trading account on

January 2, 2009 and that Defendants misrepresented that they had confirmed the accuracy of the

U.S. Bank account number Rader had entered as the account from which he would fund his

ShareBuilder transactions.  Subsequently, Defendants placed a hold on trading activity in

Rader's ShareBuilder account.  His complaint asserts claims for "unlawful tortious interference

with and confiscation of plaintiff's property and brokerage account" and "intentional invasion of

2

privacy and personal harm." (D.I. 5 at 6)

Defendants' filed their answer and counterclaims on June 2, 2009. (D.I. 7) Defendants contend that Rader's failure to enter an accurate number for his U.S. Bank account constitutes a breach of the ShareBuilder Account Agreement (hereinafter "Account Agreement").

The pending motions in *Rader I* are: (i) Plaintiff's motion for protective order and motion for sanctions (D.I. 26); (ii) Plaintiff's motion to quash subpoena and for sanctions (D.I. 27); (iii) Defendants' motion to strike the motion for protective order and motion to quash (D.I. 30); (iv) Defendants' motion to compel discovery (D.I. 42); (v) Plaintiffs' motion to disqualify Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR") and for sanctions (D.I. 44); (vi) Defendants' motion for partial summary judgment (D.I. 48); (vii) Plaintiff's renewed motion for summary judgment (D.I. 54); (viii) Defendants' motion for discovery sanctions for Plaintiff's failure to appear at his deposition (D.I. 62); (ix) Defendants' motion for Rule 11 sanctions (D.I. 68); and (x) Defendants' motion to strike Plaintiff's answering brief in opposition to motion for sanctions (D.I. 75).

### *Rader II*

Rader filed his complaint in Civil Action Number 09-544 (hereinafter "*Rader II*") on July 27, 2009. (D.I. 1) In addition to Defendants ING Direct and ShareBuilder, the Defendants originally named in the complaint in *Rader II* were ING Groep NV ("ING Groep"), ING USA Holding Corporation ("ING USA"), ING Direct Bancorp ("ING Bancorp"), Richard Donaldson, and Paul Swegle. (*Id.*) Donaldson is an MMWR attorney who represents Defendants ING Direct and ShareBuilder in *Rader I*, *II*, and *III*. (*Id.* ¶ 11) Swegle is vice president and general counsel for ShareBuilder. (*Id.* ¶ 10)

In *Rader II*, Rader alleges that the various ING Defendants "placed their service marks

3

and trade names in his personal files at ShareBuilder" and filed a false Answer in *Rader I*.  (*Id.*
¶15)  His complaint asserts claims for breach of privacy, libel, slander, and wrongful interference
with litigation ("a violation of [Plaintiff's] . . . Constitutional rights of Due Process").  (*Id.* ¶ 14)

On August 17, 2009, Defendants ING Direct, ING USA, ING Bancorp, and Donaldson
moved to dismiss the complaint.  (D.I. 8)  On September 11, 2009, Defendant ShareBuilder
moved to dismiss.  (D.I. 13)  On October 5, 2009, an entry of default was noted on the docket as
to Defendant ING Groep.  (D.I. 26)  On October 6, 2009, Rader's voluntary dismissal of
Defendants ING USA, Donaldson, and Swegle was granted.  (D.I. 23)

The pending motions in *Rader II* are: (i) Defendants' motion to dismiss (D.I. 8);
(ii) Defendant ShareBuilder's motion to dismiss (D.I. 13); (iii) Plaintiff's motions for partial
summary judgment against ING Groep, N.V. (D.I. 22, D.I. 29); (iv) Defendants' motion for Rule
11 sanctions (D.I. 27); (v) Plaintiff's motion to strike Defendants' motion for sanctions (D.I. 37);
(vi) ING Groep, N.V.'s ("ING Groep") motion to set aside the Default in Appearance (D.I. 42);
(vii) Plaintiff's motion to strike the motion to set aside the default judgment (D.I. 44); (viii)
Plaintiff's motion to disqualify MMWR and for sanctions (D.I. 49); (ix) ING Groep's motion to
dismiss (D.I. 66); and (x) ING Groep's motion for Rule 11 sanctions (D.I. 68).

### *Rader III*

Rader filed his complaint in Civil Action Number 09-781 (hereinafter "*Rader III*") on
October 20, 2009.  (D.I. 1)  In addition to ING Direct and Sharebuilder, the complaint names as
defendants attorney William A. Kinsel and his firm, Kinsel Law Offices PLLC (collectively, the
"Kinsel Defendants").  (*Id.*)  *Rader III* arises from a subpoena duces tecum the Defendants in
*Rader I* served on non-party U.S. Bank, for certain documents relating to Rader's U.S. Bank
account and his communications with U.S. Bank.  Defendant Kinsel is an attorney in

4

Washington State to whom the subpoena was made returnable. (*Id.*) Rader's complaint asserts that the Defendants in *Rader III* abused process and terrorized him in *Rader I*, through service of the subpoena on U.S. Bank. (*Id.*)

On October 23, 2009, Defendant ING Direct filed a motion to dismiss. (D.I. 4)  On November 10, 2009, ShareBuilder and the Kinsel Defendants filed another motion to dismiss. (D.I. 8)

The pending motions in *Rader III* are the two motions to dismiss (D.I. 4; D.I. 8) and Defendants' motion for Rule 11 sanctions (D.I. 15).

## LEGAL STANDARDS

### Motion for Summary Judgment

A grant of summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks omitted).  The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party

opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks

omitted). However, the "mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is

genuine only where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial").

**Motion to Dismiss - Rule 12(b)(6)**

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372

F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).

Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded

allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000)

(internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

6

right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While heightened fact

pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must

be alleged.  *Twombly,* 550 U.S. at 570.  At bottom, "[t]he complaint must state enough facts to

raise a reasonable expectation that discovery will reveal evidence of [each] necessary element"

of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d

Cir. 2008) (internal quotation marks omitted).  "[W]hen the allegations in a complaint, however

true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed

at the point of minimum expenditure of time and money by the parties and the court." *Twombly*,

550 U.S. at 558 (internal quotation marks omitted).  Nor is the Court obligated to accept as true

"bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal

quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill

Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or

allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

　　In reviewing a motion to dismiss, "[c]ourts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint and matters of public record."

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Certain additional materials may also be considered without converting a motion to dismiss into

a motion for summary judgment (which generally cannot be ruled upon without providing a

plaintiff a reasonable opportunity for discovery).  For instance, "a court may consider an

undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if

the plaintiff's claims are based on the document. . . ." *Pension Benefit,* 998 F.2d at 1196

(internal citations omitted); *see also* 5B C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (2009) ("The court is not limited to the four corners of the complaint, however. Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.").

**Discovery Motions**

District courts have broad discretion to manage discovery. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995).

**Motion to Disqualify**

The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the movant to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (same). On the other hand, because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," a court may disqualify an attorney "for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992) (internal quotation marks omitted).

Attorney conduct is governed by the ethical standards of the court before which the

attorney appears. *See In re Corn Derivs. Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct ("M.R.P.C."). *See* D. Del. LR 83.6(d).

## Motion for Rule 11 Sanctions

Sanctions under Federal Rule of Civil Procedure 11 "are based on 'an objective standard of reasonableness under the circumstances.'" *Martin v. Brown*, 63 F.3d 1252, 1254 (3d Cir. 1995). Pursuant to Rule 11, a party filing any pleading with the Court certifies that the pleading "is not being presented for any improper purpose, such as to harass . . . or to needlessly increase the cost of litigation," that the claims "are warranted by existing law" or an objectively reasonable argument for a change in existing law, and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). Rule 11 "is intended to discourage pleadings that are frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1090-91 (3d Cir. 1988) (internal quotation marks omitted). Rule 11(c) "provide[s] courts with the power to sanction abusive *pro se* litigants." *Thomas v. Connecticut Gen. Life Ins. Co.*, 2003 WL 22953189, at *3 (D. Del. Dec. 12, 2003).

## Motion for Discovery Sanctions

Federal Rule of Civil Procedure 37(d)(1)(A)(i) provides: "The court where the action is pending may, on motion, order sanction if a party . . . fails, after being served with proper notice, to appear for that person's deposition." Rule 37(d)(3) states that the "court must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

## DISCUSSION

I.    *Rader I*

    A.    **Cross-Motions for Summary Judgment**

I recommend that Defendants' motion for summary judgment be **GRANTED** as it relates

to Rader's claims and **DENIED** as it relates to Defendants' own counterclaims and Defendants'

request that Rader be enjoined from filing additional lawsuits.  I further recommend that Rader's

motion for summary judgment be **DENIED**.

By their motion, Defendants ING Direct and ShareBuilder seek an order dismissing with

prejudice all claims asserted by Rader in *Rader I*, an order holding Rader liable to ShareBuilder

for breach of contract in an amount to be determined after all three related *Rader* actions are

resolved, and a mandatory injunction prohibiting Rader from filing additional suits against

Defendants, their affiliates, and their attorneys.  (D.I. 49 at 1)  Rader opposes each of these

requests.  Further, he seeks summary judgment on his claims.  (D.I. 54)

I have concluded that there are no genuine disputes of material fact and that Defendants

are entitled to judgment as a matter of law on Rader's claims.  Rader and Defendant

ShareBuilder are parties to the Account Agreement.  This Account Agreement states that it

"shall be governed by and construed in accordance with the laws of the State of Washington."

(D.I. 49 Ex. 2 ¶ 13)  Washington follows the "economic loss rule," which "ensures that a party to

a contract cannot recover in tort the risk the parties had already allocated through contract."

*Townsend v. Quadrant Corp.*, 218 P.2d 230, 239 (Wash. App. 2009); *see also Alejandre v. Bull*,

153 P.3d 864, 867-79 (Wash. 2007).

Here, the risk that the funding account information would be inaccurate was expressly

and unambiguously allocated between the parties to Rader.  Section 8 of the ShareBuilder

10

Account Agreement states: "You [Rader] represent and warrant that the information you supplied on your Account Application is accurate . . . .  You agree to indemnify and hold ShareBuilder and its affiliates harmless from any and all damage . . . arising out of or relating to your failure to provide accurate information on your ShareBuilder Account Application . . . ." (D.I. 50 Ex. C at 000004-05)  Furthermore, in Section 38, the parties agreed: "ShareBuilder shall have no liability for and you agree to reimburse, indemnify and hold ShareBuilder, its affiliates and their partners, directors, officers and employees and any person controlled by or controlling ShareBuilder harmless from all expenses (including legal expenses and reasonable attorney's fees), Losses or damages that result from . . . your failure to provide accurate information on your ShareBuilder Account Application or to update that information as required." (D.I. 49 Ex. 2 ¶ 15; D.I. Ex. C at 000014)

All of the admissible evidence of record demonstrates that Rader failed to enter the accurate account number for the U.S. Bank savings account he intended to use to fund the purchases he made with his ShareBuilder account.  Lynda Jammerman, ShareBuilder's "Compliance Lead," who gathers materials needed in lawsuits involving ShareBuilder, has provided two sworn declarations, which explain the process by which an individual such as Rader opens a ShareBuilder account and what ShareBuilder's computer databases show occurred here.  (D.I. 49 Ex. 2 ("Jammerman 1st Decl."); D.I. 66 ("Jammerman 2nd Decl."))  Ms. Jammerman states: "ShareBuilder maintains the information a customer provides to it in the ordinary course of its business in its computer database."  (Jammerman 2nd Decl. ¶ 7)  She attaches to her second declaration a printout showing an entry of January 5, 2009 at 12:04:22 p.m., in which Rader entered his U.S. Bank account number incorrectly, in that he omitted a zero.  (Jammerman 2nd Decl. ¶ 10; D.I. 67)  The database printout further shows that on January

11

8, 2009 at 8:37:45 a.m. Rader logged in to his ShareBuilder account and corrected the U.S. Bank account number. (Jammerman 2nd Decl. ¶ 12) ShareBuilder personnel do not re-enter or re-type a customer's bank account information into a transaction request; that information is as accurate, or inaccurate, as the information provided by the customer to ShareBuilder. (Jammerman 1st Decl. ¶ 19)

Notwithstanding Rader's protestations, there is no basis to question Jammerman's competency as a witness. Nor has Rader produced any evidence – to be contrasted with his unsupported, speculative, implausible, conclusory assertions, *see, e.g.*, D.I. 63 at 14 ("As far as I'm concerned, that number was originally entered by Sharebuilder and ING Bank incorrectly . . . .") – that conflicts with Jammerman's explanation.

In short, it is undisputed that an error occurred. There is no evidence in the record from which a reasonable factfinder could conclude that the error was due to the actions of anyone other than Rader. The parties' agreement, the Account Agreement, allocates the risk of losses associated with such an error to Rader. Accordingly, Defendants are entitled to judgment as a matter of law with respect to Rader's claims.

Defendants have asserted a counterclaim against Rader for breach of contract. Defendants insist that Rader's provision of an incorrect account number renders him liable to ShareBuilder, given his duty under the Account Agreement to provide accurate account information. (D.I. 49 at 24) The initial "out-of-pocket" loss to ShareBuilder was $174.05, due to ShareBuilder's execution of Rader's trading instructions (to purchase $20,689.05 of CSCO stock) at a time when he had not provided sufficient funds (only $20,515.00) to do so. (*Id.* at 26) But ShareBuilder exercised its contractual rights to make itself whole by deducting $174.05 from the proceeds of Rader's subsequent sale of the CSCO stock he had purchased. (*Id.* at 26-

27) Hence, there is no trading-related loss for ShareBuilder to recover from Rader. I recommend that Defendants' motion for summary judgment be **DENIED** to the extent they seek to recover for any trading-related losses.

Defendants seek additional relief. First, they claim entitlement under the Account Agreement to be reimbursed for all of their attorneys' fees in *Rader I*, *Rader II*, and *Rader III*. Defendants concede that it is premature to resolve this request definitively given that each of these actions is ongoing and they are continuing to incur attorney's fees. (*Id*. at 27) Defendants also seek an order that Rader not be permitted to file additional lawsuits against them, at least not without prior screening by the Court.

I will defer ruling on these additional defense requests for relief until after objections (if any) to my recommendations and rulings today are resolved. In the meantime, all proceedings in *Rader I* (as well as the other *Rader* actions) are **STAYED**, with the exception of filing and briefing objections to the instant Report and Recommendation and Order.

### B. <u>Discovery Motions</u>

Plaintiff's motion for a protective order and motion to quash subpoena, Defendants' motion to strike Plaintiff's motions for a protective order and to quash subpoena, and Defendants' motion to compel discovery are **DENIED**. Given my recommendation that judgment be entered in favor of Defendants on Rader's claims, it is not necessary to resolve disputes about discovery sought relating to Rader's claims. Whether discovery will be necessary in connection with the portion of Defendants' counterclaim for breach of contract seeking reimbursement for attorneys' fees, and their request that Rader be barred from filing additional lawsuits against them, will be determined after objections (if any) to today's recommendations and rulings are resolved.

### C.     **Motion to Disqualify**

Rader's motion to disqualify MMWR is **DENIED**.  The purported basis for Rader's

motion is that "[t]he lawyers are witnesses in the case." (D.I. 45 at 4)  This statement was

incorrect at the time Rader made it.[1]  Now, given my recommendation that the only thing left in

this action is to determine whether Defendants are entitled to reimbursement of their attorney's

fees – and, if so, in what amount – it is clear that the only matters left to be resolved are matters

on which it is appropriate for attorneys to be witnesses (if that even proves to be necessary).

### D.     **Motion for Rule 11 Sanctions**

I recommend that Defendants' motion for Rule 11 sanctions, which is predicated on

Defendants' assertion *Rader I* has been from the start frivolous and intended to harass, be

**DENIED**.[2]  As is evident from my recommendation to grant summary judgment to Defendants

on Rader's claims, I do not find in the record evidence from which a reasonable factfinder could

conclude that Rader has met his burden of proof on any of his claims.  However, particularly

given that Rader is proceeding *pro se* and that one of the central bases for granting summary

judgment to Defendants is Washington's economic loss doctrine – which a *pro se* litigant may

not know or learn of prior to filing a complaint – I am not persuaded that it would be appropriate

---

[1]Rule 3.7(a) of the Delaware Rules of Professional Conduct requires that a party seeking disqualification of opposing counsel on this basis must show, at minimum, "a reasonable likelihood that counsel will be a necessary witness in the same litigation in which he serves as counsel for one of the parties." *Hull-Johnson v. Wilmington Trust*, 1996 WL 769457, at *4 (Del. Super. Ct. Dec. 9, 1996).

[2]I assume for present purposes that a motion for Rule 11 sanctions – at least one that, in part, asks the Court to enjoin a party from filing future additional lawsuits – is a dispositive motion. *See Silberstein v. Silberstein*, 859 F.2d 40, 41-42 (7th Cir. 1988) (holding that Rule 11 sanctions are dispositive matters).

to sanction Rader under Rule 11.[3]

Moreover, although Rader has a very weak case, Defendants have in some respects overstated those weaknesses. For example, Defendants wrongly state that Rader admitted to a ShareBuilder representative during a telephone conversation that he was responsible for entering the wrong U.S. Bank account number in the first instance. (D.I. 66 at 4-6)  What Rader actually said was that he had "reentered the number at their [i.e., Defendants'] request." (*Id*. at 5)  In this statement, Rader acknowledges only that he entered the account number for a second time; he admits nothing about whether the first time he entered his account number he did so accurately or not. Defendants also wrongly insist that in the course of his early conversations with ShareBuilder representatives Rader "decided to reverse his 'position,'" initially accepting blame for entering the wrong account number but later claiming it was ShareBuilder which mis-entered the information. (*Id*. at 6-7)  In fact, Rader has consistently blamed Defendants for either making or not detecting the error. (*Id*.)  Likewise, Defendants transform Rader's statement that he believed he was free to file suit – and was not required to arbitrate – because Defendant ING Direct is not a party to the ShareBuilder Account Agreement (which contains an arbitration requirement) into an "*admission*" that he sued ING Direct "merely to evade his obligation to arbitrate." (*Id*. at 16) (emphasis added)  Rader's statement is plainly not an admission.[4]

---

[3]I reach this conclusion despite my recognition that Rader was formerly a practicing attorney and that he has been previously reprimanded and sanctioned by the Wisconsin Board of Attorneys Professional Responsibility, Wisconsin Office of Lawyer Regulation, and other courts. *See* D.I. 31 at 1 n.1.

[4]Defendants' motion to strike Plaintiff's answering brief in opposition to motion for sanctions (D.I. 75), which is based on Defendants' premise that ING Groep is not a defendant, is **DENIED AS MOOT**.

15

### E.      Motion for Discovery Sanctions

Defendants' motion for discovery sanctions due to Rader's failure to appear at his deposition is **GRANTED**.

On November 4, 2009, defense counsel contacted Rader to set a date for his deposition. (D.I. 62 Ex. A)  The parties agreed the deposition would begin on November 23, 2009 in the Delaware office of MMWR.  (D.I. 62 at 1)  Defendants filed a copy of the Notice of Deposition on November 10, 2009.  (D.I. 37)  On November 19, 2009, Rader confirmed by email he would attend his upcoming deposition.  (D.I. 62 Ex. B)  That same day Rader sent counsel another email confirming that he had booked a flight and including portions of his travel itinerary.  (D.I. 62 Ex. D)  At 7:35 a.m. on the morning of November 23, 2009, Rader signed in at the lobby of the building in which MMWR's office is located.  (D.I. 62 Ex. E ¶ 3)  He told the concierge in the lobby he did not wish to go up to MMWR's office but instead left and said he would return between 9 and 10 a.m.  (*Id.*)  Rader returned to the building at 8:50 a.m., handed an envelope to the concierge, but stated he was not going up to MMWR's office.  (*Id.* ¶ 5)  Two MMWR attorneys, one in-house attorney for ING Direct, and a court reporter waited for Rader until 10:15 a.m.  (D.I. 62 Ex. F)  When Rader still had not shown up, or contacted them, they adjourned the deposition.  (*Id.*)

Defense counsel spent 10 hours over two days prior to the scheduled deposition preparing for it and additional time on the day of the deposition traveling and waiting, in vain, for Rader to appear.  (D.I. 62 at 4)  As a result, Defendants incurred attorney's fees of $6,135.00. (*Id.*)  They also paid $334.55 for the court reporter who appeared for the non-deposition.  (*Id.*) Defendants also did not have the benefit of Rader's deposition testimony at the time they prepared their summary judgment motion, which was due on December 2, 2009.  (*Id.* at 5; D.I.

22) Defendants' seek reimbursement of all of these costs.

Rader has had several opportunities to explain his conduct, but none of his explanations justifies his failure to appear for his deposition.  In a December 15, 2009 letter to the Court (D.I. 60), Rader stated:

> The deposition on 11/23/09 was postponed due to the conduct of your firm in not making the witness available for me to depose as requested, the pending motion for your firm's removal from the case as you are a witness; my prior request agreeing to stipulate to extend the court date and agree [*sic*] to take the deposition in January due to my daughter's illness which has not gone well, and the closed secure building of the HSBC office building, where you are on the 15th floor, and the control over my person by security guards to enter and exit; as well as related matters involving the Rule 16 debacle and filing the motion to compel, and the pending SJ motions.

Then, during a teleconference with the Court on December 17, 2009, Rader explained:

> As far as the appearance at the deposition, I went out there, and then when I got out there, I find out that he has filed a motion to compel, which threw an altogether different light on my appearance out there, and which was also compounded by the fact that when I got into the building, I felt very insecure going up into their secure – I had to sign in.  I then was put or placed under the control or custody of a guard in that HSBC building in an elevator that went to the 15th floor, in which I had no reason to know whether I was going to get out of the 15th floor.
>
> So it was a question of my safety at the time that I did nothing further because I had intended to appear . . . .

(D.I. 63 at 14)

Rader was subject to a deposition.  His deposition was properly noticed.  Defense counsel took additional steps to confirm that Rader would attend his deposition, and he repeatedly confirmed that he would.  Rader then traveled from out of state to the location of the deposition

17

but, for no justifiable reason, failed to go to the room in which the deposition was being held. He did not call defense counsel to explain he was not coming or take any action to minimize the inconvenience, burden, or cost to Defendants from his improper failure to appear. Accordingly, Rader shall reimburse Defendants for their out-of-pocket costs of paying the court reporter to be present for the non-deposition, an amount of $334.55.[5]

Rader's request for sanctions is **DENIED**. Rader seeks sanctions in connection with Defendants' efforts to obtain discovery from U.S. Bank. The subpoenas Defendants' served on U.S. Bank were appropriate and authorized by Federal Rule of Civil Procedure 45. There is nothing sanctionable about Defendants' service of the subpoena.

## II.    *Rader II*

### A.    Motions to Dismiss – Rule 12(b)(6)

I recommend that Defendants' motions to dismiss be **GRANTED**.

The bulk of Rader's claims in *Rader II* are based on his contention that Defendants in *Rader I* filed "false and libelous" pleadings in *Rader I*. (D.I. 1 ¶¶ 12-15) But Delaware adheres to the common law rule of "absolute privilege" that "protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding and were relevant to a matter at issue in the case." *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992). Plainly, the pleadings filed in *Rader I* were relevant to matters at issue in that case. Accordingly, the statements about which Rader complains were absolutely

---

[5] I do not grant Defendants' additional request to be reimbursed for their attorney's fees in connection with preparation for the deposition, in part because of Plaintiff's *pro se* status and because it is likely that Defendants' derived at least some incidental value from the hours outside counsel devoted to preparation for the deposition and interactions with in-house counsel.

privileged and Defendants are entitled to judgment as a matter of law on Rader's claims of libel and slander.

Rader's attempt to characterize the same complaints as a claim for "breach of privacy" is also defeated by the absolute litigation privilege under Delaware law. As the Delaware Supreme Court has stated: "The absolute privilege would be meaningless if a simple recasting of the cause of action from 'defamation' to 'intentional infliction of emotional distress' or 'invasion of privacy' could void its effect. . . . To the extent that such statements were made in the course of judicial proceedings, they are privileged, regardless of the tort theory by which the plaintiff seeks to impose liability." *Barker*, 610 A.2d at 1349. Rader's claim for "wrongful interference with litigation" fails for the same reason.[6]

## B.   ING Groep Motions

My recommendation that Defendants be dismissed pursuant to Rule 12(b)(6) extends to Defendant ING Groep. ING Groep should further be dismissed given the lack of evidence that this Court has personal jurisdiction over it or that it has been properly served. I further recommend that ING Groep's motion to set aside the default judgment entered against it be **GRANTED**, as the judgment appears to have been entered in reliance on Rader's misrepresentation that ING Groep had been properly served. *See generally In re Submicron Sys. Corp.*, 2004 WL 883391, at *2-3 (D. Del. Apr. 5, 2004) (granting motion to vacate default judgment based on failure of service, which constituted "good and sufficient" cause under Fed. R. Civ. Proc. 55(c) and 60(b)) Relatedly, to the extent Rader has moved for partial judgment against ING Groep – as ING Groep believes he has done (D.I. 22; D.I. 29) – I recommend that

---

[6]To the extent Rader's claims allege that ShareBuilder somehow improperly used ING's trademarks, the law does not recognize any such claim that Rader would have standing to assert.

his request be **DENIED**.  Finally, Plaintiff's motion to strike ING Groep's motion to set aside the default judgment is **DENIED**.

### C.   Motion to Disqualify

Rader's motion to disqualify MMWR is **DENIED** for the same reasons as set forth above in connection with *Rader I*.

### D.   Motion for Rule 11 Sanctions

Defendants' ING Direct and ShareBuilder and ING Groep seek sanctions (D.I. 27, D.I. 68) on the grounds that Rader's claims in *Rader II* are frivolous, not warranted by existing law, and were filed in retaliation for Defendants' refusal to accept Rader's settlement demands and "for averments made by [Defendants] in the Answer and Affirmative Defenses" in *Rader I*.  (D.I. 28 at 2)  As explained above, I am not persuaded that this *pro se* Plaintiff should be sanctioned under Rule 11.[7]  I recommend that the motions for Rule 11 sanctions be **DENIED**.

## III.   *Rader III*

### A.   Motions to Dismiss– Rule 12(b)(6)

I recommend that Defendants' Motions to Dismiss be **GRANTED**.  Defendants' service of a subpoena duces tecum on non-party U.S. Bank in *Rader I* is authorized by Fed. R. Civil Proc. 45.  This litigation conduct is absolutely privileged under Delaware law.  *See Barker*, 610 A.2d at 1345; *see also United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 n.4 (3d Cir. 1980) (stating that litigation privilege extends to subpoenas).

### B.   Motion for Rule 11 Sanctions

For reasons already discussed above, I recommend that Defendants' Motion for Rule 11

---

[7]Plaintiff's motions to strike Defendants' motion for sanctions, and for extension of time to file a response to the motion for sanctions, are **DENIED**.

sanctions be **DENIED.**

## RECOMMENDED DISPOSITION AND ORDER

For the reasons set forth above:

1.      IT IS HEREBY RECOMMENDED THAT: (i) in *Rader I*, Plaintiff's motion for

summary judgment (D.I. 54) be **DENIED,** Defendants' motion for Rule 11

sanctions (D.I. 68) be **DENIED**, Defendants' motion to strike Plaintiff's

answering brief in opposition to motion for sanctions (D.I. 75) be **DENIED**, and

Defendants' motion for partial summary judgment (D.I. 48) be **GRANTED**; (ii)

in *Rader II*, Defendants' motions to dismiss (D.I. 8, D.I. 13, D.I. 66) be

**GRANTED,** Defendants' motion for Rule 11 sanctions (D.I. 27, D.I. 68) be

**DENIED**, ING Groep, N.V.'s motion to set aside the Default in Appearance (D.I.

42) be **GRANTED**, and Plaintiff's motion for partial summary judgment against

ING Groep, N.V. (D.I. 22, D.I. 29) be **DENIED;** and (iii) in *Rader III*,

Defendants' motions to dismiss (D.I. 4, D.I. 8) be **GRANTED**, and Defendants'

motion for Rule 11 sanctions (D.I. 15) be **DENIED**.

2.      IT IS HEREBY ORDERED THAT in *Rader I,* Plaintiff's motion for a protective

order and motion for sanctions (D.I. 26) is **DENIED**, Plaintiff's motion to quash

subpoena and for sanctions (D.I. 27) is **DENIED**, Defendants' motion to strike

Plaintiff's motion for protective order and motion to quash (D.I. 30) is **DENIED**,

Defendants' motion to compel discovery (D.I. 42) is **DENIED**, Plaintiff's motion

to disqualify Montgomery, McCracken, Walker & Rhoads, LLP (D.I. 44) is

**DENIED**, and Defendants' motion for discovery sanctions for Plaintiff's failure

to appear at his deposition (D.I. 62) is **GRANTED**.

3.      IT IS HEREBY FURTHER ORDERED THAT in *Rader II,* Rader's motion for extension of time to file a response as to motion for sanctions (D.I. 32) is **DENIED AS MOOT**, Plaintiff's motion to strike Defendants' motion for sanctions (D.I. 37) is **DENIED**, Plaintiff's motion to strike the motion to set aside the default judgment (D.I. 44) is **DENIED**, Plaintiff's motion to disqualify Montgomery, McCracken, Walker & Rhoads, LLP and for sanctions (D.I. 49) is **DENIED**.

4.      IT IS HEREBY FURTHER ORDERED THAT all proceedings in *Rader I*, *Rader II*, and *Rader III* are **STAYED** until further order of the Court, **with the exception** that the parties may file and brief objections to any portion of the instant Report and Recommendation and Order.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections **of no longer than ten (10) pages within fourteen (14) days after being served with a copy of this Report and Recommendation**. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006). **A party responding to objections may do so within fourteen (14) days after being served with a copy of objections; such response shall not exceed ten (10) pages. No further briefing shall be permitted with respect to objections without leave of the Court.**

The parties are directed to the Court's Standing Order In Non-*Pro Se* Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated: April 7, 2010

                                          Leonard P. Stark
                                          UNITED STATES MAGISTRATE JUDGE