IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LARRY W. RADER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-340-LPS |
| | : | |
| ING BANK, fsb, and | : | |
| SHAREBUILDER SECURITIES CORP. | : | |
| | : | |
| Defendant. | : | |

Larry W. Rader, Wausau, WI, Pro Se Plaintiff.

R. Montgomery Donaldson, MONTGOMERY, McCRACKEN, WALKER, & RHOADS, LLP, Wilmington, DE,

Attorney for Defendant.

## MEMORANDUM OPINION

September 30, 2011
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court are a motion for summary judgment filed by ShareBuilder Securities Corporation ("ShareBuilder" or "Defendant")[1] relating to its counterclaim for breach of contract (D.I. 120) and a motion to dismiss ShareBuilder's counterclaim filed by Plaintiff Larry W. Rader ("Rader"). (D.I. 107) For the reasons that follow, the Court will grant ShareBuilder's motion and deny Rader's motion. The Court also addresses Rader's latest request that the assigned judge recuse himself.

## I. BACKGROUND[2]

In previous opinions, the Court set forth more fully certain background that also constitutes background to the instant action. *See Rader v. ING Bank*, 2010 WL 1403962 (D. Del. Apr. 7, 2010) (hereinafter, "*Rader* I Opinion"); *Rader v. ShareBuilder Corp.*, 772 F. Supp. 2d 599, 601-02.

Rader has filed four lawsuits in this Court.[3] The first three suits relate to Rader's efforts in January 2009 to open an online stock trading account with ShareBuilder.[4] In a report and

---

[1] ShareBuilder Securities Corporation recently changed its name to "ING Direct Investing, Inc." (D.I. 121 at 1 n.1) In order to avoid confusion and discontinuity in the record, the Court will continue to refer to Defendant as ShareBuilder.

[2] On a motion to dismiss, the Court must accept all factual allegations contained in the complaint as true and make all inferences in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).

[3] Civil Action No. 9-340 (*Rader* I); Civil Action No. 09-544 (*Rader* II); Civil Action No. 09-781 (*Rader* III); Civil Action No. 10-398 (*Rader* IV). Collectively, these cases will be referred to as the "Rader Actions."

[4] The contract into which the two parties entered is entitled the ShareBuilder Account Agreement (hereinafter, "Account Agreement"). (D.I. 124 Ex. 1)

recommendation submitted on April 7, 2010, and later adopted by Judge Robinson on June 10, 2010, the Court granted judgment in favor of ShareBuilder in all three actions. *See Rader v. ING Bank fsb*, 2010 WL 2403058 (D. Del. June 10, 2010) (adopting report and recommendation); *see also Rader I*.

In *Rader I*, 2010 WL 1403962, at *6, the Court held that Rader and ShareBuilder were parties to the Account Agreement. Further, the Court held that pursuant to § 8 and § 38 of the Account Agreement, the parties "expressly and unambiguously allocated" to Rader the risk of inaccuracies in the information about the bank account used by Rader to fund deposits into his ShareBuilder investment account. *Id.* The Court also stated that "[a]ll admissible evidence of record demonstrates that Rader failed to enter the accurate account number for the U.S. Bank savings account he intended to use to fund the purchases he made with his ShareBuilder account." *Id.*

On April 7, 2010, at the time that the Court ruled that Rader had breached the ShareBuilder Account Agreement, *Rader* I, *Rader* II, and *Rader* III remained pending and had not been fully resolved. *Id.* at *7. Therefore, the Court held that it was premature to award ShareBuilder any claimed attorney's fees and damages. *Id.* Following the April 7, 2010 ruling, Rader commenced *Rader* IV, an action alleging conspiracy and fraud by ShareBuilder in connection with seeking attorney's fees. *See Rader v. ShareBuilder Corp.*, 772 F. Supp. 2d 599 (D. Del. 2011). Subsequently, on March 24, 2011, *Rader* IV was dismissed. *Id.* at 608. Thus, the only remaining issues in the Rader Actions are Defendant's motion for summary judgment on its contract counterclaim (D.I. 120) and Rader's motion to dismiss Defendant's counterclaim. (D.I. 107)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly*, 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and

3

unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B. Motion For Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## III. DISCUSSION

### A. Motion to Dismiss[5]

In his motion to dismiss, Rader asserts that the counterclaim should be dismissed because of Defendant's "willful misconduct in serving an unsigned discovery document." (D.I. 107 at 1) In connection with this alleged willful misconduct, Rader also requests that the Court impose Rule 11 sanctions against Defendant's attorneys (hereinafter, "defense counsel"). Both of

---

[5]Defendant correctly asserts that Rader's motion to dismiss is procedurally improper. (D.I. 110 at 3) Under Federal Rule of Civil Procedure 12(b), a motion to dismiss must be filed before an answer. However, this Court has held that a rigid interpretation of Rule 12(b) is improper and courts have discretion to look beyond the technical deficiencies and examine the substance of the motion. *See Martin v. Delaware Law Sch. of Widener Univ.*, 625 F. Supp. 1288, 1296 n.4 (D. Del. 1985).

5

Rader's requests lack merit: defense counsel were not required to sign individual documents within their document production. Additionally, from the evidence presented, it appears that defense counsel fully complied with the Court's order regarding discovery. Defense counsel delivered the document production under cover of a signed letter. (*See* D.I. 115 Ex. A) Therefore, there is no evidence of any misconduct, and Rader's assertion that defense counsel violated Rule 11 is totally without merit.

Rader asserts that "the Counterclaim also lacks merit" because the claim is for "fees in tort actions unrelated to the brokerage contract," actions which were commenced after termination of the contract. (D.I. 107 at 2) At the motion to dismiss phase, this Court must take all factual allegations of ShareBuilder as true, and ShareBuilder pled that the Account Agreement covers the fees arising from all actions, including actions that arose after account termination. (*See* D.I. 29 ¶¶ 9,11) Therefore, Rader's motion to dismiss ShareBuilder's counterclaim is denied.

### B. Motion For Summary Judgment

In opposition to Defendant's motion for summary judgment, Rader raises various issues relating to the breach of contract counterclaim generally. Additionally, Rader makes specific objections to Defendant's fee requests. The Court will address each of these issues in turn.[6]

---

[6] As a preliminary matter, the Court notes that Rader asserts multiple claims that are unsupported by the facts in the record and, therefore, will not be addressed further. First, Rader asserts that "[e]stoppel bars the SCC counterclaim." (D.I. 126 at 8) Rader presents no evidence to support this argument. Further, Rader asserts that ShareBuilder's name change to ING Direct is an admission of tortious interference with his brokerage account. (*Id.*) This contention is unsupported by any evidence. Rader also asserts that SCC "failed to keep records as required under 12 C.F.R. 559.10." (D.I. 129 at 2) This is irrelevant. Finally, Rader asserts that the "maxim *Omina praesumuntur contra spoliator* applies to bar the SCC counterclaim." (*Id.*) This latin expression refers to spoilation, of which there is no evidence in this case.

1.  **Breach of Contract**

In *Rader I*, 2010 WL 1403962, at *6, the Court held that ShareBuilder and Rader were parties to the Account Agreement and that Rader breached the agreement by failing to provide accurate account information. Thus, the only remaining issues with respect to ShareBuilder's breach of contract claim are the scope of the contractual provision regarding damages and the appropriate damages.

Pursuant to the terms of the Account Agreement, Washington law governs the dispute between Rader and ShareBuilder. (D.I. 124 Ex. 1 § 6; D.I. 79 at 10) Under Washington law, "attorney's fees may be awarded only when authorized by a contract, statute, or recognized ground in equity." *Forbes v. Am. Bldg. Maint. Co. W.*, 240 P.2d 790, 795 (Wash. 2010). The Account Agreement contains two fee provisions that contractually require Rader to pay ShareBuilder's reasonable attorney's fees and costs. (*See* D.I. 121, 6-7) Section 8 of the Account Agreement provides:

> You agree to indemnify and hold ShareBuilder and its affiliates harmless from and against any and all damage, cost, judgment, liability, loss, award, settlement, tax, penalty, action, expense or fee (***including reasonable attorneys' fees and costs of collection***) of any nature, and claims therefore . . . arising out of or relating to your failure to provide accurate information on your ShareBuilder Account Application or to update that information as required.

(D.I. 124 Ex. 1 § 8) (emphasis added) Section 38 of the Account Agreement also contains a provision relating to fee reimbursement:

> [Y]ou agree to reimburse, indemnify and hold ShareBuilder, [and] its affiliates . . . harmless from all expenses (***including legal expenses and reasonable attorney's fees***), Losses or damages that

> result from . . . your failure to provide accurate information on your ShareBuilder Account Application or to update that information as required.

(D.I. 124 Ex. 1 § 38) (emphasis added) Therefore, Rader's argument that the "American Rule prohibits federal courts from awarding attorney['s] fees in the absence of a statute or contract permitting a fee award" is unavailing, because here the parties' contract – the Account Agreement – expressly permits a fee award. (D.I. 126 at 4)

Further, § 8 and § 38 of the Account Agreement do not limit the potential damages to ShareBuilder's legal expenses incurred prior to account termination. (D.I. 128 at 4) Section 42 of the Account Agreement contains a survivability clause that applies to § 8 and § 38. (*Id.*; *see also* D.I. 124 Ex. 1 § 42) This survivability clause explicitly states that the provisions of § 8 and § 38 "shall survive any termination of this Agreement." (*Id.*) Thus, Rader's argument that the Court lacks subject matter jurisdiction over ShareBuilder's claim for post-termination damages is unfounded.[7] (D.I. 126 at 2, 5)

Moreover, § 8 and § 38 of the Account Agreement contain provisions expanding Rader's liability for fees and expenses beyond those spent strictly on ShareBuilder's defense. (*See* D.I. 124 Ex. 1 §§ 8, 38) Section 8 states that Rader's indemnity obligation extends to "ShareBuilder and its affiliates," while § 38 applies to "ShareBuilder, its affiliates and their partners, directors,

---

[7]Although Rader does not make any valid argument to challenge the Court's subject matter jurisdiction, the Court notes that it has jurisdiction over this counterclaim pursuant to 23 U.S.C. 1367(a) because the claim for attorney's fees arises out the same case or controversy as the initial lawsuit in this Court, namely Rader's failure to provide accurate account information. (*See* D.I. 29 at 7)

officers, and employees and any person controlled by or controlling ShareBuilder."[8] *(Id.)* These unambiguous provisions apply to the circumstances presented here; thus, there is no issue of material fact regarding the scope of the fee provisions. Therefore, the Court concludes that all of the legal fees and costs incurred during the defense of the Rader Actions are within the scope of the Account Agreement.

Additionally, despite Rader's assertion to the contrary, the damages for breach of contract, including attorney's fees and costs, were foreseeable. (D.I. 126 at 4-5) Under Washington law, Rader needed to have "only reason to foresee, not actual foresight" relating to the potential damages he might face from breach of the Account Agreement. *Larson v. Walton Plywood Co.*, 390 P.2d 677, 681 (Wash. 1964). Here, the Account Agreement itself identifies both the specific risk of breach involved in this suit – Rader's "failure to provide accurate information on [his] ShareBuilder Account Application" – and the specific type of injury – "all damage, . . . expense or fee (including legal expenses and reasonable attorney[']s fees) . . . arising out of or relating to" the breach. (D.I. 128 at 6; D.I. 124 Ex. 1 § 8) In construing contracts, Washington courts have interpreted the term "'arising out of' . . . to mean 'originating from', 'having its origin in', 'growing out of', or 'flowing from.'" *American Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 698 (Wash. 2010). Here, all of the Rader Actions "arise out of" and are "related to" the Account Agreement and Rader's failure to provide accurate account information; indeed, without Rader's actions regarding the account, there would never have been

---

[8]The Account Agreement defines "affiliated company" and "affiliated person" in such a way so as to include the various defendants who have been named in the Rader Actions. (*See* D.I. 121 at 8-9)

any lawsuit. Therefore, as a matter of law, it was foreseeable that Rader would have to pay damages for post-account termination legal fees.[9]

Further, Rader's assertion that he did not have "equal negotiating power" for the brokerage contract fee clauses fails as a matter of law. (D.I. 126 at 5) Rader has presented no evidence or pointed to any facts that demonstrate there was unequal negotiating power or that the contract provisions themselves were substantively unconscionable. This precludes the Court from finding that any part of the Account Agreement was unconscionable. *See Montgomery Ward & Co., Inc. v. Annuity Bd. of S. Baptist Convention*, 556 P.2d 552, 556 (Wash. Ct. App. 1976) ("The existence of an unconscionable bargain presents a question of law for resolution by the court upon facts in evidence."). Rader argues that he lacked negotiation power because "[o]nly SCC and its affiliates had access to [Rader's] password to access his account to change information therein." (D.I. 126 at 6) However, the Court previously rejected this contention as being unsupported by the evidence. (*See* D.I. 79 at 12) Therefore, the Court concludes that the Account Agreement fee clauses are valid and enforceable.

Finally, the Court concludes that there is no question as to the authenticity of the contract. Rader contends that Defendants attempted to "defraud" him by failing to present an original copy of the Account Agreement. (D.I. 126 at 8) Rader relies on Federal Rule of Evidence 1002 to support his contention that the original version of the agreement must be provided. (*Id.*)

---

[9]"Foreseeability is normally an issue for the jury, but it will be decided as a matter of law where reasonable minds cannot differ." *McKown v. Simon Prop. Group, Inc.*, 2011 WL 1085891 (W.D. Wash. Mar. 22, 2011) (citations omitted). Here, based on the explicit language of the Account Agreement and the record evidence, the Court concludes reasonable minds cannot differ on this issue.

10

However, in a situation such as this, in which the original agreement is an agreement in electronic form, a duplicate is admissible. *See* 15 U.S.C. § 7001. Additionally, under Federal Rule of Evidence 1003, a duplicate is generally admissible unless "a genuine question is raised as to the authenticity of the original . . . or in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. Here, Rader has failed to raise a genuine question as to the authenticity of the original, and the Court concludes there are no circumstances present that would make it unfair to admit the duplicate in lieu of the original.

### 2. Rader's Objections to Fee Requests

Rader raises various objections to ShareBuilder's specific fee requests. First, Rader asserts that because ShareBuilder's motion for sanctions under Rule 11 was denied there should be some fee reduction; specifically, in Rader's estimation, a $200,000 to $250,000 fee reduction. (D.I. 126 at 8) This argument fails because ShareBuilder incurred the expenses of litigating the Rule 11 motion because of Rader's failure to provide accurate account information and Rader's decision to bring numerous lawsuits against ShareBuilder. The Rule 11 motion, although denied, was part of the overall litigation strategy of ShareBuilder and, therefore, contributed to the successful defense of all of the Rader Actions. (D.I. 128 at 8) There is no evidence to support Rader's claim that the fees should be reduced as a result of the denial of the Rule 11 motion. Because Defendant has satisfied its burden of proving damages by submitting billing records, Rader needed to come forward with specific facts showing that there was a genuine issue for trial; Rader has failed to come forward with any such facts.

Further, Rader asserts that defense counsel are required to separate their fees among the various Rader Actions. (D.I. 126 at 6) However, all of the Rader Actions arose out of Rader's

11

failure to provide accurate account information. Therefore, defense counsel can recover fees relating to all the Rader Actions, and there is no requirement that the fees be separated out by specific cause of action.

Finally, Rader asserts that ShareBuilder failed to "declare that the SCC demand of $366,041.87 of fees and expenses were necessary and reasonable." (D.I. 126 at 7) This assertion is contrary to the facts in evidence. Specifically, Defendant presented the statements of Messrs. Donaldson, Kinsel, and Swegel as to the reasonableness of the fees incurred. (D.I. 122 ¶ 10; D.I. 123 ¶ 14; D.I. 124 ¶ 11) Rader has presented no evidence that the fees were unreasonable or unncessary. Thus, there are no genuine issues of material fact remaining with respect to Defendant's counterclaim.

### C. Calculation of Fees

Having determined that there are no issues of material fact remaining, the Court will now address the proper amount of attorney's fees and costs to award to ShareBuilder. Washington law requires courts to use the "lodestar formula" to determine an appropriate fee award. *Mahler v. Szucs*, 957 P.2d 632, 651 (Wash. 1998) (citation omitted). "Under the lodestar methodology, a court must first determine that counsel expended a reasonable number of hours in securing a successful recovery for the client." *Id.* Next, a court must determine "the reasonableness of the hourly rate of counsel at the time the lawyer actually billed the client for the services." *Id.* "Finally, the lodestar fee, calculated by multiplying the reasonable hourly rate by the reasonable number of hours incurred in obtaining the successful result, may, in rare instances, be adjusted upwards or downward in the trial court's discretion." *Id.*

After examining the billing records submitted by defense counsel, the Court has determined that counsel spent a reasonable number of hours on the Rader Actions. In assessing whether counsel spent a reasonable number of hours on a case, the Court "must discount any duplicated or wasted effort by the attorneys." *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 205 (Wash. 1983). Here, the Court has concluded that defense counsel did not have any duplicated or wasted efforts in this litigation. The only reason that defense counsel had to continually spend time on writing briefs and filing motions in the various Rader Actions was because of Rader's continued course of conduct in filing lawsuits against ShareBuilder. Therefore, defense counsel spent a reasonable number of hours working on the Rader Actions, as reflected in their bills up to May 2, 2011.

Moreover, all of defense counsel charge a reasonable hourly rate. Under Washington law, "[w]here the attorneys in question have an established rate for billing clients that rate will likely be a reasonable rate." *Bowers*, 675 P.2d 193, 203 (Wash. 1983). Here, the attorneys all have an established rate for billing, and the Court concludes that these rates are reasonable. Mr. Kinsel charges an hourly rate of $210. (D.I. 123 at 5) This rate is lower than rates that Washington Courts have found reasonable for an attorney practicing in Washington. *See Collins v. Clark Cnty. Fire Dist. No. 5*, 231 P.3d 1211, 1227-28 (Wash. 2010) (setting hourly rate at $280 for attorney in Puget Sound area); *Miller v. Dep't of Labor and Indus.*, 2009 WL 2992596, at *8 (Wash. Ct. App. 2009) (finding hourly fee of $350 appropriate for partner level work). Mr. Donaldson of Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR") charges an hourly fee of $420. (D.I. 122 Ex. A) Ms. Chelis of MMWR charges an hourly fee of $415. (*Id.*) Ms. Brown of MMWR charges an hourly fee of $325. (*Id.*) The hourly fees charged by the attorneys

of MMWR are reasonable for the Wilmington, Delaware legal community. *See Mattern & Assocs., L.L.C. v. Seidel*, 678 F. Supp. 2d 256, 274 (D. Del. 2010) (opining that hourly billing rate of $290 was reasonable); *Segen v. OptionsXpress Holdings Inc.*, 631 F. Supp. 2d 465, 476 (D. Del. 2009) (recognizing hourly rates of $450 and $250).

Thus, defense counsel have demonstrated that the fees and costs they incurred in defending all of the Rader Actions, and in pressing the counterclaim, are reasonable. Therefore, the Court finds that ShareBuilder should be awarded $366,041.87 in attorney's fees and costs for the Rader Actions through May 2, 2011.[10] Additionally, the Court finds that ShareBuilder is also entitled to a supplemental fee award for any additional attorney's fees and costs relating to this litigation incurred after May 2, 2011.

### D. Disqualification

Rader has once again[11] sought to remove the assigned judge from handling the Rader Actions, including the instant action. Specifically, on September 8, 2011, Rader filed a "Notice of Willful Misconduct of Federal Judge Leonard P. Stark." (D.I. 131) On September 27, 2011, Rader filed a "Motion for & Affidavit for Disqualification and Removal of Judge Leonard P. Stark." (D.I. 132) The Court construes both papers as a request that the assigned judge recuse himself.

Rader's request is based on the fact that the assigned judge has an on-line savings account

---

[10]This figure reflects bills submitted by Kinsel Law Offices, PLLC for $64,610.21 and MMWR for $301,431.66. (D.I. 121 at 4-5)

[11]*See Rader v. Sharebuilder Corp.*, 772 F. Supp. 2d 599, 607 (D. Del. 2011) (denying motion for recusal based on suspected but non-existent *ex parte* conversation).

with Defendant ING Bank. (*See* D.I. 141 at 3) (financial disclosure report showing savings account with balance of $15,000 or less earning annual interest of $1000 or less) Holding a deposit account with a bank does not constitute a disqualifying financial interest. *See* 28 U.S.C. § 455(b)(1) (stating judge "shall also disqualify himself in the following circumstances: . . . (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ."); *id.* § 455(d)(4) (defining "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as a director, adviser, or other active participant in the affairs of a party"); Code of Judicial Conduct for United States Judges Canon 3(C)(1)(c) & 3(C)(3)(c) (same). Nor does holding such an account create a basis for a reasonable, knowledgeable observer to question the assigned judge's impartiality. *See* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."). Thus, there is no basis for recusal or disqualification. Accordingly, Rader's request is denied.

## IV. Conclusion

For the foregoing reasons, the Court will grant ShareBuilder's motion for summary judgment and deny Rader's motion to dismiss. The Court also denies Rader's request for recusal. An appropriate Order follows.